## NEWCOMB v. THORPE.

ACCOUNTING—PARTNERSHIP—ESTOPPEL.
On a bill for a partnership accounting, it appeared that defendant induced N., M., and H. to form a limited partnership for the development of a mining claim; that, finding said claim unavailable for lack of improvements, defendant secured a transfer of another claim to himself which he sold to a corporation, organized by the members of the development company, receiving therefor a certain amount of stock in the corporation together with promissory notes, of which he assigned a one-third interest to N., M. and H.; and that said notes and stock were later adjudged void as a profit secretly made from a transaction with the corporation in which they were directors. Held, that, as the parties had assented to the terms of the sale, their assignees were not equitably entitled to compel defendant to account on the theory of a failure of consideration; such shares and notes being, in effect, forfeited on the ground of public policy.

Appeal from Wayne; Donovan, J. Submitted January 13, 1909. (Docket No. 77.) Decided March 30, 1909.

Bill by William W. Newcomb and Edward J. Tisdale against William A. Thorpe and Henry C. Rees for a partnership accounting. From a decree dismissing the bill, complainants appeal. Affirmed.

*Willard E. Warner*, for complainants.

*McGregor & Bloomer*, for defendant Thorpe.

MONTGOMERY, J. In September, 1905, the defendant William A. Thorpe made an examination of a mining claim in the Cobalt region, known as lot 7. He approached complainant Newcomb, Archibald McPhail, and Charles M. Hovey, all of Detroit, and proposed to interest them in the development of the property. The parties entered into an agreement for a partnership association limited, in which they were to be equal partners, the company to have a capital stock of $10,000, the property to be contributed to consist of the mining claim in question at $9,000, and $1,000 in cash to be contributed by Newcomb, McPhail, and Hovey in equal parts. It was also agreed at the time that as to the proceeds of the first property developed, according to the claim of defendant, but as complainant now claims as to the proceeds of lot 7, the parties should share in a somewhat different ratio, namely, that Mr. Thorpe was to have one-third, Mr. Rees one-third, and the other three parties, Messrs. Newcomb, Hovey, and McPhail, the remaining one-third of the proceeds. The copartnership papers it appears, although signed, were never formally filed, but the parties interested proceeded to act under them to some extent. Within a few days after this copartnership arrangement, the Ruethel Mining Company was organized by the same parties. Small sums of money were paid in to the development company by the parties, and Mr. Thorpe went to the Cobalt district, his expenses being paid by the devel-

opment company, and he, having decided that lot 7 was not available for development for the reason that sufficient work had not been done to satisfy the Canadian authorities, negotiated with McMahon Bros., and secured a transfer of another lot in the same neighborhood numbered 15. He acquired this lot in his own name, and on the 18th of November, 1905, he transferred it to the Ruethel Mining Company for a consideration of $17,000 and other considerations, to be paid as follows: The sum of $3,500 in promissory notes of the company, and the issue to Thorpe of 66,700 shares of the capital stock of the company, of which 45,000 shares should be taken in part payment for the property at 30 cents on the dollar, and the balance of 21,700 shares should be held by Thorpe in trust to be disposed of with the consent of the directors at a price not less than 30 cents per share, and the proceeds thereof to be applied in payment of the amount due Thorpe upon promissory notes, and the balance to be paid to the treasurer of the company to be applied on expenses for the development of the property sold, etc. At this time defendants Thorpe and Rees, complainant Newcomb, C. M. Hovey, J. W. Wolst, and C. J. Munsell, were the directors of the mining company. Upon receipt of this purchase price from the company, and on the same day, the defendant Thorpe divided the proceeds of the sale of lot 15 among the members of the development company in the ratio of one-third to himself, one-third to Rees, and the remaining one-third among the three other members of the development company, Newcomb, McPhail, and Hovey. In 1907 the Ruethel Mining Company filed a bill in the high court of justice for Ontario, alleging that the purchase of lot 15 by Thorpe was made for the Ruethel Mining Company, and that in the transaction by which he sold the lot to the mining company and received the stock and notes therefor he had defrauded the company. In the meantime the complainant Newcomb had deposited his stock with the secretary of the company to be canceled if the court should

determine the case adversely to the defendants. Rees, McPhail, and Hovey were codefendants with Thorpe in that case. The court found in its decree that Thorpe did not buy the property for the Ruethel Mining Company, but held that the sale was made by Thorpe on behalf of the development company, and that, Hovey, McPhail, and Rees having received a portion of the proceeds of such sale without the knowledge of some of their co-directors, they occupied the position of directors who had taken and retained secret profits in a transaction; that they were in the strictest sense trustees of the company, and had assumed a position in which their interests conflicted with their duty; and that they did this at the peril of being made accountable to the company at its election for any profits secretly made out of the transaction with the company, and therefore decreed that as to these parties the stock should be held void, and the notes canceled. The complainants, by assignment having become possessed of all the rights of McPhail and Hovey, bring this bill for an accounting, claiming, *first*, that by the original transaction Hovey, McPhail, and Newcomb were entitled to one-fifth each of the proceeds of lot 15 as partnership property; *second*, that by the cancellation of the stock issued to them, consideration for a release of their rights to the defendant Thorpe having failed, they are entitled now to share with him to the same extent as though the $15,000 of stock and the $3,500 in notes had been the sole consideration received upon the sale of lot 15.

The first proposition is purely a question of fact. The testimony of the complainant Newcomb, and that of the defendant Thorpe, is in direct conflict upon the question as to whether the agreement for the division of the proceeds of the first property exploited in the ratio of one-third each to Thorpe and Rees and the remaining one-third to be divided among the other three related to lot 15, or whether it was limited to lot 7, which was the lot originally intended to be exploited. The testimony of the complainant Newcomb given in the Canadian court and

that on the present trial is in many respects in conflict. We think the weight of the evidence sustains the conclusion of the trial judge that this agreement for a division in the ratio stated was intended to apply to whatever lot was the first one exploited by the company, and this proved to be lot 15. If the testimony were more evenly balanced, the fact that without dissent or serious objection the division of the avails of the property when the sale was made to the Ruethel Mining Company was upon this basis would be almost conclusive as to the understanding of the parties.

Are the complainants in a position to now assert that the transaction to which they were parties by which the sale was made by Thorpe to the Ruethel Mining Company was other or different from that which the parties assented to at the time? In other words, is this a case of failure of consideration, except as the result of an infraction of public policy by the holders of this stock? We think not. The parties Newcomb, McPhail, and Hovey were fully cognizant of their relations to this property and of Thorpe's relation thereto. Assuming that all parties were acting in good faith, Thorpe did not consent to part with the title to lot 15, the legal title being in his name, except upon the very terms which the parties all assented to, and upon the division of the proceeds which was then agreed upon and made. It now transpires that three of these parties have been defeated of the profits which they would have made, and they have inured to the benefit of the company, and this on the ground of public policy that the directors of a corporation may not profit at the expense of the corporation itself. In effect, a forfeiture has been declared against them in favor of the company. But a court of equity will not be open to permit them to recoup their loss through their own misconduct by creating a new contract with the defendant Thorpe more favorable to them than that which they were content to enter into.

The conclusion of the circuit judge that the bill of complaint is without equity was correct.    The decree dismissing the bill will stand affirmed, with costs of both courts to the defendant.

BLAIR, C. J., and GRANT, OSTRANDER, and MC-ALVAY, JJ., concurred.